(20 App. Div. 22.)

BRADLEY v. JOHN HANCOCK MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department.   July 13, 1897.)

1. LIFE INSURANCE—FAILURE TO PAY PREMIUMS—WAIVER OF FORFEITURE.
    Defendant insurance company issued to one B. a policy of insurance on his life, the premiums on which were payable weekly, and which provided that, if the premiums should be over four weeks in arrears, the policy should be "out of benefit." B. having died, in an action on the policy it appeared that at the time of his death more had been paid on the policy than the total premiums then accrued, but that during a period of more than four weeks some time before B.'s death nothing had been paid. The company at this time notified B. that the policy had lapsed, and called for a health certificate as a condition of reinstating it, which B. signed, and sent to the company, agreeing therein that the reinstatement should be on condition that the statements in the certificate were true. It also appeared that after this time the company accepted payment of premiums. The proofs of B.'s death, submitted to the company, indicated that he had not been in sound health at the time of signing the certificate, but there was evidence authorizing a finding that he was. *Held*, that the trial court was authorized to find that the nonpayment of premiums was waived, that there was no lapse, that the company was never entitled to require B. to apply for reinstatement, and that the beneficiary was entitled to recover on the policy.

2. SAME—PROOFS OF DEATH—CONCLUSIVENESS.
    The proofs of death submitted to a life insurance company under a policy, though admissible, in an action on the policy, as evidence of the cause of death, are not conclusive on the beneficiary.

Appeal from trial term.

Action by Winifred Bradley against the John Hancock Mutual Life Insurance Company.   From a judgment on a verdict for plaintiff, and an order denying a motion for a new trial, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Leonard J. Langbein, for appellant.
John W. Lyon, for respondent.

GOODRICH, P. J.   The action was brought upon an insurance policy issued in August, 1891, upon the life of Patrick Bradley, payable to his wife.   At the same time three other policies were issued to members of the family.   The weekly premiums upon the several policies were as follows:

| | |
|---|---|
| Bradley, Ed. B. | $ .05 |
| "      Mary | .05 |
| Patrick Bradley | .10 |
| Winifred    " | .10 |
| Total | $ .30 |

Bradley died November 17, 1896.   The premiums were payable weekly, and the policy provided that "all policies upon which premiums are over four weeks in arrears are out of benefit."   It was the custom of the insured to pay the premiums on all of the policies together in one sum.   The company issued with the policies what is called a "Premium Receipt Book," one of which, commencing January 8, 1896, was pro-

duced in evidence. One column gives the weekly dates when pre-
miums fell due; a second column, the date when the premium was
paid; a third, the amount of premium; and the fourth, the collector's
signature. This book, commencing on January 8, 1896, shows a num-
ber of payments, which may be summarized as follows: The number
of weeks from January 8, 1896, to November 11, 1896, is 45.
There are entered in the book, and receipted for by the collector of
the company, payments on the four policies amounting to $11.80.
There is also credited a dividend equal to 10 weeks' premium on two of
the policies, amounting to $1.50. There is also in evidence a letter
from the secretary of the company, showing the receipt by him of
$1.20. These sums amount in all to $14.50, which is one dollar more
than the amount of payment due at the time of the death of Patrick
Bradley, who died on November 17, 1896, before another premium
became due. So far as appears by the book, however, there was no
weekly payment made between September 9th and November 6th, and
on October 22d the secretary of the company, who had received the
$1.20 above referred to, wrote Mrs. Bradley that the policy had
lapsed, as no payment had been made for a period of four weeks, and
that it would be necessary to have a health certificate signed and
returned with 90 cents extra premium, when, if all were satisfactory,
the company would reinstate the policy, holding meantime the receipt
book and the $1.20 which she had remitted. The insured made appli-
cation for reinstatement, in which he said:

"I, being the person insured hereby, make application for the reinstatement
of said policy, and certify that I am in good health; that I have not consulted
a physician since date when last payment was due as above; and I understand
that said policy is not now in force, and is to be reinstated only on condition
of the truth of the above statements; and that no liability is assumed by said
company unless this application for reinstatement is accepted at its home
office."

Subsequently, however, other payments were entered on the book,
viz. November 6, $2.40, and on November 23d, after the death of the
insured, 10 cents. After Bradley's death, proofs of loss were present-
ed by the plaintiff, in which it was stated that the deceased died of
tuberculosis pulmonis, with other complications, and that the dura-
tion of the disease had been four months. The plaintiff, at the trial,
offered in evidence the policy of insurance in suit, and rested, without
proving the death of Bradley, the same having been admitted by the
answer. The defendant's counsel moved to dismiss the complaint on
the ground that the plaintiff had not shown the payment of the premi-
ums, whereupon the plaintiff, being recalled, testified that she had
paid the premiums continuously until the death of the insured, and
produced the premium receipt book above referred to. Upon her
cross-examination, the application for reinstatement was produced and
offered in evidence by the defendant, and also the proofs of death
before mentioned. At the close of the evidence the defendant moved
to dismiss the complaint on the ground that the payment of the
premiums was not proven, that there had been an application for a
reinstatement of the policy and that the same had not been granted,
and that the proofs of loss showed that the insured had had tuber-
culosis pulmonis for four months previous to his death, and, conse-

quently, was not in good health at the time of the application for rein-statement of the policy.    Both parties moved for a direction of a verdict, and the question is whether there was sufficient evidence to establish the payment of the premiums.    It appeared clearly that there was a period of upwards of four weeks, viz. September 9th to November 26th, for which no premiums had been paid, and one of the conditions of the policy, as stated above, is as follows:  "All policies upon which premiums are over four weeks in arrears are out of bene-fit."    Assuming, for the moment, that there had been a failure to pay premiums as claimed, and that the policy had lapsed, and that the com-pany was justified in requiring an application for reinstatement, still, as it continued to receive weekly premiums, as shown by the receipt book and defendant's letter of October 22d, which exceeded the amount of premiums due on the day of Bradley's death, and continued to receive them after the receipt of the application for reinstatement, the date of which is not given, but which must have been after October 22d, the date of the company's letter requiring it, the defendant waived the nonpayment of the premiums during the period of four weeks above referred to.    The appellant claims, however, that the receipt of premiums was induced by the statements in the application for reinstatement that the insured was in good health, and had not consulted a physician for four months; but the oral testimony of the plaintiff was that the insured was in good health, and had not consult-ed a physician; that neither Dr. Leahy nor Dr. Meddrick attended him; that Dr. Leahy came to the house to see her sister, and that while there he had prescribed for her husband, and given him some medicine, and that this was on the Friday before his death.    There is some suggestion of his previous prescription for la grippe, four or five months before his death, but this date is not very definite, and it was apparently more than four months before October 22d; and the plain-tiff says her husband recovered his health after that, so that it is not all clear that there was any consultation with a physician within the meaning of the term used in the application for reinstatement, "con-sulted a physician."    She also testifies that she did not know Dr. Med-drick, had never heard of him, and that he did not attend the insured. This evidence becomes important in view of the proofs of death sub-mitted by the plaintiff.    There are two medical certificates.    Dr. Leahy's certificate contains the following:  "Date of first visit or prescription in last illness?    Aug. 1, 1896."    Dr. Meddrick's certificate says:  "Date of your first visit or prescription in last illness?    April 29, 1896.    Did not attend him during last illness.    Date of your last visit?    July 18, 1896."    These statements are not inconsistent with the testimony of the plaintiff, for the reason already adverted to.    The most that can be said is that there was conflicting or inconsistent evi-dence which might have been submitted to the jury, but this the de-fendant waived by its request for the direction of a verdict, and its failure thereafter to ask for a submission of the question of fact to the jury.    But it is also to be observed that the question in the medical certificate relates to "visit or prescription."    The answers are not in-consistent with the plaintiff's testimony as to a prescription when Dr. Leahy came to see her sister.    It is true that the proofs of loss furnish

some evidence of the facts therein stated, but, after all, they are only prima facie evidence, and may be rebutted.    In Chinnery v. Insurance Co., 15 App. Div. 515, 44 N. Y. Supp. 581, it was held that, while proofs should have been admitted as evidence, they were not conclusively binding upon the plaintiff.    See, also, to the same effect, Hanna v. Insurance Co., 150 N. Y. 526, 44 N. E. 1099; Howard v. Association, 18 Misc. Rep. 74, 41 N. Y. Supp. 33.    To hold otherwise would be to put the beneficiary always at the mercy of the physician, whose diagnosis might be utterly unfounded or unreliable.    The defendant might have produced and examined the physicians at the trial to establish the statements of the certificates, and cannot, in the face of the plaintiff's testimony, and after moving for the direction of a verdict, rely upon the certificates to the extent of saying that they must necessarily overcome the positive testimony of the plaintiff.    It may also be said that from the receipt by the company of the application for reinstatement, and its failure to return it, and the acceptance of subsequent payments by the collector who had been in the habit of receiving premiums, the consent of the company to the reinstatement may be inferred.    At any rate, we think the company was put to its proof that it had not made such reinstatement.    The evidence upon this subject was in its own possession, and the general rule is that a party which sets up an affirmative defense, and has the evidence in its possession, is bound to prove such fact affirmatively, rather than is the other party to prove the negative.    This suggestion receives pointed force from the peculiar form of the answer, in which the defendant alleged, but only upon information and belief, that such application had not been accepted nor said policy reinstated.    In Spencer v. Insurance Co., 142 N. Y. 505, 37 N. E. 617, the court held that the burden of proof is upon a defendant to establish an affirmative defense set up in an answer, and that this burden is not changed by the presentation of evidence which prima facie establishes the defense.    The learned court below was therefore justified in finding from the evidence that the premiums had been fully paid, that there was never any lapse of the policy, that the company was never in a position to require the insured to apply for a reinstatement, and that on the whole evidence the plaintiff was entitled to the direction of a verdict.

The judgment is affirmed.    All concur.