## DAVIS v. SUPREME LODGE KNIGHTS OF HONOR.

(Supreme Court, Appellate Division, Second Department.    December 13, 1898.)

1. LIFE INSURANCE—BREACH OF WARRANTY—BURDEN OF PROOF.
   Where defendant alleges, in defense to an action on a benefit certificate, a breach of warranty on the part of the insured, it has the burden of proving it.

2. SAME—KNOWLEDGE OF APPLICANT.
   Where an applicant is asked if his parents or grandparents, or any of their descendants, have died of consumption, so far as known, the question calls only for his knowledge, and hence a false answer is not a breach of warranty unless he knew its untruth.

3. WITNESSES—PRIVILEGED COMMUNICATIONS—PHYSICIANS.
   Under Code Civ. Proc. § 834, providing that a physician shall not disclose information acquired in professionally attending a patient, which was necessary to enable him to act, a physician cannot testify to his knowledge of the cause of a decedent's death, or of the nature of his last illness, where it was acquired in professional attendance.

4. SAME—WAIVER OF PRIVILEGE.
   The fact that an objection to a physician's testifying to a privileged communication is waived by an applicant for life insurance, who is not the patient or his personal representative, does not make the physician a competent witness against the beneficiary in the policy, since the waiver is personal, and Code Civ. Proc. § 836, provides that such a communication can be admitted only by consent of the patient or his personal representative.

5. SAME—RIGHT TO OBJECT.
   When the knowledge of a physician or surgeon in relation to a patient falls within the purview of Code Civ. Proc. § 834, not allowing him to disclose it, any party in interest or to an action may object to his testifying thereto.

6. SAME—RECORDS.
   Knowledge of a physician or surgeon gained in attending a patient, which Code Civ. Proc. § 834, does not allow him to disclose without his patient's consent, is inadmissible, in the form of a written declaration contained in the records of the board of health of New York City, to prove the cause of a patient's death, though authenticated copies of the records are by Laws 1897, c. 378, § 1172, made presumptive evidence of their facts, statements, and recitals, when relevant.

7. LIFE INSURANCE—MISREPRESENTATIONS—QUESTIONS FOR JURY.
   When the representation of insured that he was in sound health, and had fully recovered from the grippe, which he had a few months before he was examined, was confirmed by the testimony of the examining physician, though contradicted by the evidence of another physician, who claimed to have made a voluntary examination of the insured about the same time, discovering symptoms which indicated, in his opinion, that he was in the early stages of consumption, it was for the jury to say whether insured had misrepresented his condition.

Appeal from trial term, Kings county.

Action by Alice A. Davis against the Supreme Lodge Knights of Honor. From a judgment in favor of plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

W. R. Spooner, for appellant.

Herbert A. Heyn, for respondent.

HATCH, J. The purpose of this action is to recover the sum of $2,000, secured to be paid by a benefit certificate issued by the defendant. The issue tendered by the answer was a breach of warranty by the insured in making untrue answers in his petition for membership in the defendant, and in his answers given to the physician upon his medical examination. It is not contended but that the answers given by the insured, in order to procure the issuance of the certificate, constituted a warranty of the truth of all material statements therein, and, if the same be false in a material particular, it avoids the contract of insurance. The defendant having averred a breach of the warranty, the burden is upon it to affirmatively establish such breach. Spencer v. Association, 142 N. Y. 505, 37 N. E. 617; Dougherty v. Insurance Co., 3 App. Div. 313, 38 N. Y. Supp. 258. The particulars in which a breach of warranty is averred consist in a claimed false statement that the insured had not been attended by a physician or consulted one since January, 1895; that he made a good recovery from the grippe, which he had in that year; that he was in good health down to the date of his initiation into the lodge of the defendant, on June 4, 1895, and had been prior thereto; that neither of the parents of the insured, nor any of the paternal or maternal grandparents, or any of their descendants, so far as known, had died of consumption.

So far as the last of these claimed misrepresentations is concerned, it is clear that the fact of a relative or a descendant therefrom, within the degree named, dying of consumption, is not conclusive in determining the character of the representation. Such fact must have been known to the insured when he gave the answer, else it would not constitute a breach. He did not assume, nor was he asked to state, that none of those relatives had died of the diseases or any of them therein named. The question simply called for his knowledge, and, when he answered truthfully in that respect, he committed no breach of the contract, even though the fact was otherwise. Mayer v. Association, 49 Hun, 336, 2 N. Y. Supp. 79; Dilleber v. Insurance Co., 69 N. Y. 256. The only evidence bearing upon this subject is found in the proofs of death, wherein Dr. Silberman, the attending physician at the time of death, states that the remote cause of death was "tuberculosis," and the immediate cause "phthisis pulmonalis and heart failure." The physician further states that the tendency of the insured to have the disease which caused his death was "hereditary." Giving to this statement its full force, it must fail, for two reasons. It in nowise appears that the disease which caused death afflicted any of the relatives named in the

question which the insured answered when he made his application. It might be hereditary, and yet be from a more remote ancestor than is embraced in the question. But, if it be assumed it was an ancestor or descendant embraced in the question, it by no means follows that the insured had knowledge of such fact; which, as we have seen, is the essential thing to be established before it can be affirmed that there was any breach in this respect. It was sought to establish the breach in this regard by showing that two aunts of the deceased had died of consumption prior to the issuance of the certificate. For this purpose Dr. Bodkin, a physician who attended one of the aunts in her last illness, was called as a witness, and asked the cause of her death, and also whether or not she had suffered from consumption. This testimony was objected to as privileged and inadmissible, under section 834 of the Code of Civil Procedure. To the court the witness answered that he knew nothing of the disease from which the aunt suffered except as he learned it while attending her professionally. The court thereupon excluded the testimony. A similar fate attended upon an attempt to show by Dr. Silberman of what disease the other aunt died. This ruling was proper. Grattan v. Insurance Co., 80 N. Y. 281; Grossman v. Lodge (Sup.) 6 N. Y. Supp. 821. The waiver by the insured of this disability in his petition for membership in the defendant did not make such testimony competent, assuming, without deciding, that such waiver was broad enough in terms to embrace the testimony which was offered. The waiver was personal to the insured, and could not operate beyond him, as he had no power to impose such condition upon any one else. The statute protects the patient, and the seal of secrecy can only be removed by him (Buffalo Loan, Trust & Safe-Deposit Co. v. Knights Templar & Masonic Mut. Aid Ass'n, 126 N. Y. 450, 27 N. E. 942); or by the personal representatives (Code Civ. Proc. § 836). When the evidence falls within the purview of the statute, it is not admissible, and any person in interest or any party to the action may make the objection. Westover v. Insurance Co., 99 N. Y. 56, 1 N. E. 104.

The records of the board of health, offered for the purpose of establishing the same fact, were properly excluded. In so far as they contained declarations of the attending physician, they fell under the ban of the statute. The written declaration of a physician as to the cause of death is no more permissible than is his sworn statement, if such testimony was otherwise competent. The certificates are not competent as evidence between private parties as to the cause of death. Buffalo Loan, Trust & Safe-Deposit Co. v. Knights Templar & Masonic Mut. Aid Ass'n, supra. Nor do the provisions of the charter (Laws 1897, c. 378, § 1172) change this rule. McKinley v. Insurance Co. (City Ct. Brook.) 26 N. Y. Supp. 63.

As to the other questions, the defendant relies on the testimony of Dr. Silberman, who testified that he attended the insured in January, 1895. He did not again treat him prior to the illness which resulted in his death. The witness testified that he examined the insured once between January, 1895, and his last illness. The date of this examination was quite important, as it was near to the time when the insurance

54 N.Y.S.—65

was effected, and when the medical examination therefor was had by the physician of the defendant, and therefore bore directly upon the claimed breach of warranty. He thought the examination was in April, would not swear that it was not in May, but did swear positively that it was not in June. The meeting at which the examination was had, according to the witness, was accidental. The insured did not go to consult him, but for some other purpose, which the witness did not recollect. The insured did not ask to be examined, but the doctor examined him of his own accord, after asking him how he felt, and receiving the reply that he did not feel quite well. The doctor stated that he tested his lungs by percussion and auscultation, and found dullness on percussion. He had a cough, shortness of breath, and an accelerated pulse. Based upon this examination, the witness was of opinion that the insured was in the early stages of consumption. The witness did not regard this as a consultation. He made no record and no charge, although in his prior attendance upon him he had done both, and he did not inform the insured of the results of his examination. The witness further testified that the insured did not make a good recovery from the grippe; that it left him with a cough, weakness, shortness of breath, and general anæmia. On redirect examination, the witness amplified somewhat upon his former testimony as to the physical condition of the insured, stating: "He had a cough, with exaggerated respiration or hurried breathing. Complained of weakness. Lost flesh, and the evidences in the lungs themselves indicated incipient phthisis. Dullness in percussion and listening to the lungs on auscultation showed signs of the beginning of inflammation." The petition for membership was dated December 19, 1894; the medical examination was had on the 17th day of May, 1895; and the certificate bore date July 10, 1895. The petition stated that the applicant was in sound bodily health, and his medical examination by the defendant's physician tended to confirm it. The examining physician of the defendant, in answer to the question that he was required to certify, shows that when he examined the rate of pulse of the insured it was 72, was not intermittent, irregular, or unsteady; that his respiration was full, easy, and regular, and the murmur clear and distinct over both lungs; that there was an entire absence of indications of disease of the organs of respiration or their appendages; that the heart's action was uniform, full, and regular; that he made careful auscultation and percussion of the thorax; that he considered the applicant to be habitually free from tendency to cough, difficulty of breathing, and palpitation of the heart. This doctor considered the applicant a first class risk, and recommended him for membership in the order. The doctor was also examined as a witness upon the trial, and verified his examination. He also stated that a very essential part of his examination was the lungs; that he made a careful examination, and did not find anything the matter with his lungs; that, in his opinion, he did not have incipient consumption. On cross-examination he stated that in the earlier stages of consumption the condition of the individual is materially better on some days than it is upon others, dependent somewhat upon the condition of the weather. It is quite evident that the testi-

mony of these physicians cannot stand together, except in the view that the examination of Silberman was made after the examination by Thompson, and perhaps this view is permissible. The examination by the former may have been made any time in May, and force be given to his testimony, as the date of his last examination may have been any time in that month; while the latter was upon the 17th of that month, and is a certain date. It seems somewhat improbable that the conditions could have existed as found by Silberman, if he made his examination in April, and no trace of them exist upon the 17th day of May following, even though the condition be better on one day than another, as there seem to have been plain symptoms; and equally so that the insured should have been in sound bodily health on the latter date, and developed incipient consumption, with the attendant symptoms as described, 14 days thereafter. However this may be, it is sufficient now to say that the question of reconciliation, if that were possible, was for the jury. In any event, Silberman's testimony was not conclusive. It was subject to scrutiny by the jury. He made no mention of his examination in April or May in the proofs of death, although the questions he was there required to answer fairly required it. He stated that there was not a good recovery from the grippe, but in this he was disputed by the insured, and also by the examination and testimony of Thompson; and this applies as well to the later statements made by the insured, just prior to the issuance of the certificate. In any view, the question was for the jury, and their finding is conclusive. Bradley v. Insurance Co., 20 App. Div. 22, 46 N. Y. Supp. 627.

The judgment should therefore be affirmed, with costs.